UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CATHERINE BODDIE BEGO, | ) | Civil Action No. 08-654 (JDS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| DISTRICT OF COLUMBIA., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## Introduction

Presently before the Court is Defendant District of Columbia's ("the District") Motion for Summary Judgment [Doc. # 25] and Plaintiff's Motion to Strike Defendant's Reply [Doc. # 31][1]. The lawsuit concerns Plaintiff Catherine

---

[1] Plaintiff's Motion to Strike concerns two exhibits attached to Defendant's Reply Brief. The exhibits are "Report Cards" published by the Appleseed Foundation concerning the DC government's response to HIV/AIDS treatment programs. As discussed *infra*, the Court's decision was made without considering the objectionable information and, as such, the Motion shall be denied as moot.

Page -1-

B. Bego's ("Bego") challenge of a series of alleged adverse actions which culminated with her removal from the position of Deputy Administrator of the D.C. Department of Health's ("DOH") Addiction Prevention and Recovery Administration ("APRA"). Bego asserts that, "her degradation of authority and ultimate removal was a result of a pattern and practice of employment discrimination that allegedly targeted at least five of APRA's older senior managers." Complaint (Complt.) ¶ 1. Bego alleges that such removals are in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1)-(2) (ADEA), and the D.C. Human Rights Act (DCHRA), D.C. Code §§ 2-1402.11(a)(1), 2-1403.16. Bego further alleges retaliation in that her termination came less than two months after she filed a charge of age discrimination with the EEOC. Her retaliation claim is brought pursuant to 29 U.S.C. § 623(d) and D.C. Code §§ 2-1402.61(a), 2-1403.16.

The District acknowledges that Bego was terminated. However, it states that there were legitimate non-discriminatory and non-retaliatory reasons for its actions. Specifically, the District argues that a KPMG report (discussed *infra*) and a supervisor's observations of the practices within the APRA justified the actions undertaken with respect to Bego. The Court finds factual issues exist sufficient to survive summary judgment.

**Factual Summary**

Bego is 65 years old and had been employed at APRA for approximately 39 years. Complt. ¶¶ 1, 5. The APRA plans, coordinates and delivers substance abuse prevention and treatment services. Complt. ¶ 7. Bego's employment with APRA was terminated on January 22, 2008, at which time she held a management position, as Deputy Administrator. Defendant's Statement of Material Facts as to Which There is No Genuine Issue (DSMF) ¶ 7. The duties of the Deputy Administrator, include, "providing leadership and direction in the execution of Administration programs," "recommending policies and regulations," "planning and coordinating the execution of programs," "[s]erving as Acting Administrator in the absence of that official, assuming complete responsibility for operation of [APRA]," and "participat[ing] in all phases of administration and program planning." Id. at 8.

On June 25, 2007, Ms. Fernandez Whitney ("Whitney") was appointed APRA's Senior Deputy Director. Id. at 10. Prior to assuming that position, Whitney worked for Councilmember Catania, Chairman of the Committee on Health, which had oversight over the APRA. Id. at 11. After a city-wide emergency was declared involving substance abuse, DOH engaged KPMG, LLP to conduct an "organizational assessment" of the APRA (KPMG Report). The

KPMG Report was released on April 20, 2007, approximately two months before Whitney left the city council staff for the APRA. Id. at 14. The KPMG report noted several deficiencies within the APRA in, amongst other areas, management operations, budgeting, staffing and professionalism. Id. at 15-23.

After taking control of APRA, Whitney states that she personally observed several problems with the management of the agency which mirrored the deficiencies in the KPMG Report. Id. at 24. As a result, Whitney decided that a "functional realignment" of APRA was necessary. Id. at 23. In other words, she determined that the structure of agency management, as well as agency services and operations, had to be reorganized. Id. As part of the functional realignment, "every management position was under review" by Whitney. Id. Whitney noted that the agency had one supervisor or manager for every 3.7 employees, which she considered "top heavy", and perceived the management structure to be impeding the purpose of the agency. Id. at 34. Further, Whitney stated that she found managers engaged in duplicative functions. Id. at 35. For example, Whitney found that Bego's work with faith-based initiatives was duplicated by another manager, Marcia Middleton . Id.

On November 27, 2007, Bego filed a charge of age discrimination with the EEOC. Id. at 40. Whitney terminated Bego on January 22, 2008 purportedly as

part of the "functional realignment." Id. at 38. Whitney then directed Ms. Middleton to assume Bego's duties for faith-based and community services within APRA. Id. at 39. Bego filed a second charge on January 27, 2008 alleging retaliation. Id. at 40. The instant lawsuit followed.

## Standard of Review

I. Summary Judgment

Summary judgment, "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ P. 56(c); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C.Cir.2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Id. at 895 quoting Anderson , at 248. An issue is "genuine" if the evidence could provide for a reasonable jury returning a verdict for the nonmoving party. *See* Id. When considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. On a motion for summary judgment the Court shall, "eschew making

credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C.Cir.2007).

However, a party opposing summary judgment must set forth more than mere unsupported allegations or denials and the opposition must be supported by affidavits, declarations or other competent evidence, demonstrating specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the opposing party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson at 249-50; *see also* Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.' ") *(quoting* Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). To successfully defend a motion for summary judgment, a party must have more than "a scintilla of evidence to support his claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C.Cir.2001).

## Discussion

I. ADEA and Retaliation Claims

To establish a *prima facie* case of discrimination under the ADEA, Bego must demonstrate facts sufficient to create a reasonable inference that age discrimination was the "but-for" cause of the District's adverse decision. See Gross v. FBL Fin. Servs., 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009). With respect to cases brought under both the ADEA and DCHRA, the DC Circuit mandates application of the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); See also Paquin v. Fannie Mae, 119 F.3d 23, 26, n. 1 (D.C.Cir.1997); Mianegaz v. Hyatt Corp., 319 F.Supp.2d 13, 20 (D.D.C.2004) ("[T]he same analytical framework applies to both ADEA and DCHRA claims.").

Initially, to establish a *prima facie* case for age discrimination a plaintiff must show that she, "(i) belongs to the protected age group, (ii) was qualified for the position, (iii) was terminated and (iv) was replaced by a younger person." Paquin v. Fannie Mae, 119 F.3d 23, 26, (D.C.Cir.1997). Additionally, "[a]n employer may not retaliate against an employee for conduct protected under the ADEA." Id. at 31. With respect to a retaliation claim, a plaintiff must establish "(1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." Wiley v. Glassman, 511 F.3d 151, 155 (D.C.Cir.2007).

Once those criteria are established, the burden shifts to the employer to, "articulate some legitimate, nondiscriminatory [or non-retaliatory] reason" for its action. Paquin 119 F.3d 23 at 26. Finally, a plaintiff must prove by a preponderance of the evidence that the reasons proffered by the employer are a pretext for discrimination or retaliation. *See* McDonnell Douglas, 411 U.S. at 804.

In the present case, Bego alleged that she suffered an adverse employment action and the District has asserted a legitimate nondiscriminatory non-retaliatory reason for its decision. Accordingly, the Court's analysis rests with the final prong of the McDonnell Douglas framework. In other words, the Court must consider whether Bego provided sufficient evidence for a reasonable jury to find that the District's stated nondiscriminatory non-retaliatory reasons are a pretext. *See* Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C.Cir.2008). The analysis under Brady "appl[ies] equally to retaliation claims" as it does to discrimination claims. Jones v. Bernanke, 557 F.3d 670, 678 (D.C.Cir.2009). The District relies on the KPMG Report and the subjective observations of Whitney as the nondiscriminatory and non-retaliatory reasons for its decision.

In her Response, Bego sets forth the following allegations which, she argues, present questions of fact for a jury as to whether the reasons proffered by the District are but a pretext to discrimination and retaliation:

• The KPMG study did not come out until April 2007, 2 months before Whitney assumed her post.

• Whitney was recruiting her 29 year old friend ... to serve in a key position in APRA, ... as early as 2006 – long before the KPMG study [was] issued.

• The KPMG report does not recommend a 'functional realignment' or use the phrase or something synonymous in any way.

• The KPMG report does not recommend, directly or by implication, that a new high level position be created to supplant Bego's duties and stature.

• The KPMG report did not recommend, directly or by implication, that the older managers whom she severed be terminated.

• Whitney did not follow any of the established procedures under D.C. Personnel rules for implementing a structural realignment. ...

...


• [A]fter Bego filed an EEO complaint and served it on Whitney, Whitney expressed her anger to Jennifer Mumford, another close friend whom Whitney had brought into [the] APRA, and spoke about how she would reduce Bego to a grade 9.

• Only shortly after Bego filed her EEO complaint did Whitney begin to set in motion the process to terminate her.

*See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment. P. 2-4.

Further, Bego argues that the following ageist remarks demonstrate a discriminatory intent:

• Whitney's comment to Bego that she ... wanted a more youthful

appearance in the Executive Office at APRA.

• Whitney's comment to APRA senior staff that she wanted to reinvigorate APRA.

• Whitney's comment that she was looking for fresh new blood.

Id. at 19.

Additionally, Bego argues that Whitney had a pattern of terminating qualified older managers, some of whom she replaced with younger persons. Bego sets forth declarations of five managers to this effect[2].

The District does not directly address Bego's allegations of pretext and underlying discriminatory and retaliatory intent. Instead, the District makes conclusory statements that the KPMG Report and Whitney's personal observations of deficiencies in management justified the actions against Bego. The District does not directly acknowledge the alleged remarks and argues that in the event they were made they amount only to "stray remarks" with no discriminatory intent.

As set forth above, Bego has set forth sufficient evidence creating genuine issues of material fact to preclude summary judgment. The District failed to adequately rebut Bego's allegations that the KPMG Report and Whitney's observations were a pretext for discrimination and retaliation. Instead, the District

---

[2]See [Doc. No. 28] Declaration of Carol Ware, Declaration of Linda Fisher, Declaration of William Lewis, Declaration of Bonita Bantom, Declaration of Maxine Blocker.

simply restates the contents of the KPMG Report and Whitney's observed deficiencies within APRA. Further, with respect to Bego, the observed deficiencies could be belied by mainly positive performance evaluations. *See*, [Doc. 28-1] ¶ 12.

Considering the alleged ageist remarks, the District's denial or dismissal of the remarks further evidence factual issues for a jury to resolve. The District admits that the remarks could have different meanings. The jury ought to determine such facts by evaluating the credibility of the witnesses.

While Bego's case may be less than perfect, the Court is unable to determine that *no* reasonable jury could conclude that the reason for the District's actions regarding Bego was a pretext for discrimination or retaliation. Consequently, Bego's claims of discrimination and retaliation survive summary judgment.

Accordingly, **IT IS ORDERED** that:

1. Defendant's motion for summary judgment [Doc. No. 25] is **DENIED**

2. Plaintiff's Motion to Strike Defendant's Reply [Doc. # 31] is **DENIED** as MOOT.

3. The Parties are ordered to appear via teleconference (406-247-7011) with Chambers on Wednesday August 4, 2010 at 8:30 am Mountain Standard

Time for a status conference.

The Clerk of Court shall notify the parties of the making of this Order.

**DONE** and **DATED** this 21st day of July, 2010

/s/ Jack D. Shanstrom
Jack D. Shanstrom
Senior U.S. District Judge